UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRIDGETTE DENISE HARRIS,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

19-CV-303
DECISION & ORDER

---

On March 7, 2019, the plaintiff, Bridgette Denise Harris, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On October 22, 2019, Harris moved for judgment on the pleadings, Docket Item 10; on January 21, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on February 11, 2020, Harris replied, Docket Item 14.

For the reasons stated below, this Court grants Harris's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Harris argues that the ALJ and the Appeals Council erred in two ways. Docket Item 10-1. She first argues that the ALJ erred in not giving controlling weight to the opinions of two of her treating physicians. *Id.* at 17-23. She also argues that the Appeals Council erred in rejecting her request to submit additional evidence after the ALJ's initial decision. *Id.* at 24-28. This Court agrees that the ALJ and the Appeals Council erred and, because those errors were to Harris's prejudice, remands the matter to the Commissioner.

**I.     PHYSICAL RFC AND THE TREATING PHYSICIAN RULE**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  See 20 C.F.R. § 404.1527(a)(2), (c)(2); see also Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist."  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted).  These are the so-called "Burgess factors" from Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008).  Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019).  "An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight" to a treating source opinion "is a procedural error."  Id. at 96 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

3

Here, the ALJ gave only "partial weight" to the opinions of two of Harris's treating physicians—internist Thomas C. Rosenthal, M.D., and internist Michael D. Calabrese, M.D.  Docket Item 6 at 151-52.

Dr. Rosenthal opined in April 2014, and again in April 2015, that, due to her fibromyalgia, Harris was moderately limited in walking and sitting; and very limited in standing, lifting, carrying, pushing, pulling, bending, and climbing.  *Id.* at 627, 1247.  He further believed that her impairments would last at least a year.  *Id.*  Dr. Rosenthal explained that his opinions were based on his having treated Harris for more than five years.  *Id.*

The ALJ acknowledged that Dr. Rosenthal was "a treating physician" whose 2014 "opinion [was] consistent with the record as it relate[d] to the diagnoses of [Harris's] conditions and certain portions of the medical source statement that flow[ed] from the diagnosis [*sic*] including [Harris's] walking and sitting limitations."  Docket Item 6 at 151; *see also id.* at 152 (identical language with respect to April 2015 opinion).  But for each of Dr. Rosenthal's opinions, she found that "other limitations were inconsistent with some of the objective medical findings and with his own progress notes in the record."  *Id.* at 151, 152.  And the ALJ noted that Dr. Rosenthal is not a psychiatrist and that his evaluations were completed three and four years before the ALJ rendered her opinion.  *Id.* at 151, 152.

Dr. Calabrese opined in August 2017 that, due to her bilateral knee osteoarthritis, lumbar spine degeneration, radiculitis myospasm, and bilateral carpal tunnel syndrome, Harris was moderately limited in lifting, carrying, pushing, pulling, bending, using her hands, and climbing; and very limited in walking and standing.  *Id.* at 1234-35.  He

4

explained that Harris's bilateral knee osteoarthritis and lumbar spine degeneration were permanent conditions, and he expected the radiculitis myospasm and bilateral carpal tunnel syndrome to last 7-11 months.  *Id.* at 1234.  Dr. Calabrese had begun treating Harris in September 2016.[2]  *See id.* at 1235, 657.

The ALJ found that like Dr. Rosenthal's opinion, Dr. Calabrese's opinion was "consistent with the record as it relate[d] to the diagnoses of [Harris's] conditions and certain portions of the medical source statement that flow[ed] from the diagnosis [*sic*]." *Id.* at 152.  But exactly as she had found with respect to both of Dr. Rosenthal's opinions, the ALJ found that "other limitations" in Dr. Calabrese's opinion "were inconsistent with some of the objective medical findings and with his own progress notes in the record."  *Id.*

The ALJ failed to "explicitly" consider several of the *Burgess* factors before assigning only "partial weight" to Dr. Rosenthal's and Dr. Calabrese's opinions.  For example, while the ALJ acknowledged that Dr. Rosenthal "stated [that] he ha[d] been treating the claimant for five years" in April 2014, and "6 [*sic*] years" in April 2015, the ALJ never addressed the frequency, nature, or extent of that treatment.  *See id.* at 148, 151-52.  Moreover, while the ALJ noted that "Dr. Rosenthal does not have a specialty in psychiatry," she did not explain why that observation was relevant to opinions that addressed Harris's limitations "standing, lifting, carrying, pushing, pulling, bending, stairs [*sic*] or other climbing[,] . . . walking, [and] sitting."  *Id.* at 148, 151-52.  And while

---

[2] The record includes a single physical therapy evaluation completed by a therapist in Dr. Calabrese's office in 2013.  *See id.* at 655-56.  But Harris did not visit Dr. Calabrese's office again until September 2016, when her treatment with him and his team became more frequent and regularly scheduled.  *See id.* at 657-752.

5

the ALJ noted what Dr. Rosenthal was not a specialist in, she did not address what his specialty was or why that specialty and his continuous treatment of Harris did not entitle his opinions to controlling weight. *Id.* at 148, 151-52.

The ALJ's error with respect to Dr. Calabrese's opinion is even more troubling. For example, although the ALJ referred to certain treatment notes from Dr. Calabrese, those notes began in October 2017, *see id.* at 149, a year after Dr. Calabrese first treated Harris; and the ALJ never acknowledged that Dr. Calabrese and his team treated Harris regularly for almost a year and a half, *see id. at* 149, 152; *see also id.* at 657-752, 896-969.   Indeed, the ALJ never even referred to Dr. Calabrese as a "treating physician." *Id.*  at 149, 152.

The ALJ thus failed to "explicitly" consider "the frequency, length, nature, and extent of [Dr. Rosenthal's and Dr. Calabrese's] treatment" or either physician's specialty.  *See Greek*, 802 F.3d at 375.  What is more, using identical language three times, the ALJ rejected "limitations" in  Dr. Rosenthal's and Dr. Calabrese's opinions as "inconsistent with some of the objective medical findings and [their] own progress notes," Docket Item 6 at 151, 152, but she never said what those limitations were—let alone what objective findings and progress notes they were inconsistent with or how they were inconsistent.  And she most certainly did not explicitly address "the amount of medical evidence supporting the opinion[s]."  *Greek*, 802 F.3d at 375; *see also Gorny v. Comm'r of Soc, Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018) (explaining that when an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported his RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for

6

meaningful judicial review"). In sum, the ALJ erred in giving only limited weight to the treating physicians' opinions and failing to explicitly address the "*Burgess* factors." *See Estrella,* 925 F.3d at 96.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning '[partial] weight'" to Dr. Rosenthal's and Dr. Calabrese's opinions. *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

First, Dr. Rosenthal's and Dr. Calabrese's opinions were consistent with each other—strong evidence of their validity. Both found that Harris was very limited in standing and at least moderately limited in walking, lifting, carrying, pushing, pulling, bending, and climbing. Both treating physicians' opinions also were supported by their treatment notes, including their reports of Harris's own descriptions of her symptoms. *See Soto v. Barnhart*, 242 F. Supp. 2d 251, 256 (W.D.N.Y. 2003) ("When fibromyalgia is alleged, the credibility of a claimant's testimony regarding her symptoms must take on substantially increased significance in the ALJ's evaluation of the evidence."). For example, Dr. Rosenthal observed that Harris had difficulty walking, *see* Docket Item 6 at 566 (August 2013); diagnosed her with osteoarthritis of the hip, *id.* at 1156 (July 2015); and consistently recorded her complaints of back, wrist, and knee pain, as well as of loss of feeling in her hands and leg numbness, *see e.g.*, *id.* at 561 (August 2013), 579

7

(February 2008), 1138 (October 2015).  And members of Dr. Calabrese's office noted that Harris reported pain in her knee and back as well as leg numbness and that these symptoms worsened with walking, bending, climbing, and prolonged sitting and standing.  *See, e.g.*, *id.* at 660 (September 2016), 910 (September 2017), 936 (January 2017).  They also observed that Harris had an abnormal gait; limited range of motion in her lumbar spine, hip, and knee; and tenderness and diminished strength in her lower extremities and hand.  *See, e.g.*, *id.* at 669 (October 2016), 922 (May 2017), 933 (February 2017).

Furthermore, Dr. Rosenthal's and Dr. Calabrese's opinions were supported by other physicians' treatment notes as well.  In April 2016, for example, internist Saburo Okazaki, M.D., documented Harris's complaints of bilateral knee pain, back pain, and decreased sensation in both hands.  *Id.* at 1073.  He observed that Harris had decreased range of motion in both hands and bilateral tenderness in her back.  *Id.* at 1079.  Similarly, in December 2015, August 2016, and December 2017, internist Priyanka Patnaik, M.D., recorded Harris's complaints of leg numbness and pain in her back, legs, and knees.  *Id.* at 839, 1037, 1112.  Dr. Patnaik noted that Harris's "back/spine examination was abnormal."  *Id.* at 770, 1043.  And in October 2013, Hongbiao Liu, M.D., completed a consultative neurologic exam of Harris, Docket Item 6 at 596-600, observing that Harris walked "with a limp" and could walk on her heels and toes only "with moderate difficulty because of low back pain," *id.* at 597.

Finally, the ALJ's own assessment that Harris's activities of daily living were "inconsistent with disabling symptoms and limitations" does not otherwise provide good reasons for the physical RFC.  *See id.* at 151.  The Second Circuit repeatedly has made

clear that "[i]n the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted). "While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [s]he is not free to set [her] own expertise against that of a physician who submitted an opinion to or testified before [her]." *Id.* (citation and original alterations omitted); *see also Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" (quoting *Wagner v. Sec. of Health & Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990)).

In light of the "partial weight" she gave to the opinions of all the physicians who addressed Harris's physical limitations, *see* Docket Item 6 at 151-52 (assigning "partial weight" to the opinions of Drs. Rosenthal and Calabrese as well as to the opinion of the consultative examiner, Dr. Liu), the ALJ had no medical support for her specific RFC findings. For example, how can someone whose physicians opine is "very limited" in standing—and "very limited," "moderately limited," or "mild[ly] to moderate[ly] limit[ed]" in walking—"stand or walk for four hours . . . per eight-hour workday"? *Compare id.* at 145, *with id.* at 147-49.

When all was said and done, the ALJ's physical RFC determination rested on nothing more than her own assessment that Harris's ability to perform certain household

9

chores and attend church meant that she was not disabled. But as a lay person, she was not qualified to make that determination. And that requires remand.

In sum, Dr. Rosenthal and Dr. Calabrese both opined that Harris was very limited in standing and at least moderately limited in walking, lifting, carrying, pushing, pulling, bending, and climbing. In contrast, the ALJ improperly used her own lay judgment to find that Harris could "perform light[3] work . . . except [she] can stand or walk for four hours, and sit for six hours per eight-hour workday; can alternate between sitting and standing once every hour for 5 minutes without increasing time off task; [and can perform] occasional pushing and pulling[ and] . . . climbing of ramps and stairs." Docket Item 6 at 145. The Court therefore remands the matter to the Commissioner for reconsideration.

## II.    THE APPEALS COUNCIL'S REJECTION OF NEW MENTAL RFC EVIDENCE

"Pursuant to 20 C.F.R. § 416.1470(b), the Appeals Council must consider additional evidence that a claimant submits after the ALJ's decision if it is new, material, and relates to the period on or before the ALJ's decision." *Hollinsworth v. Colvin*, 2016 WL 5844298, at *3 (W.D.N.Y. Oct. 6, 2016). "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v.*

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b).

*Chater*, 77 F.3d 41, 45 (2d Cir. 1996).  To be entitled to a remand so that the Commissioner can consider new evidence, a claimant must

> show[ ] that (1) the proffered evidence is new and not merely cumulative of what is already in the record; (2) the evidence is material, that is, both relevant and probative, such that there is a reasonable possibility that the new evidence would have influenced the agency to decide differently; and (3) there was good cause for the claimant's failure to present the evidence earlier.

*Ostrovsky v. Massanari*, 83 F. App'x 354, 358 (2d Cir. 2003) (summary order) (citing *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988)).

Here, the Appeals Council rejected Harris's request to submit May 2018 medical records from Erie County Medical Center ("ECMC"), June/July 2018 records from ECMC, and June/July 2018 medical records from Medical Care of Western New York at Buffalo ("MCWNY").  *See* Docket Item 6 at 7.  The May 2018 records, the Appeals Council explained, "d[id] not show a reasonable probability . . . [of] chang[ing] the outcome of the decision," and the June/July 2018 records "d[id] not relate to the period at issue."  *Id.*

Harris argues that there is good cause for her failure to present the evidence to the ALJ:  she says that the evidence did not exist when the ALJ rendered her decision on May 31, 2018.  *See* Docket Item 10-1 at 24.  But that is true only with respect to the records from June and July 2018, not the early May 2018 records.  Because Harris does not offer any reason explaining her failure to submit the May 2018 records, the Court will not order the Commissioner to consider that evidence.

The June and July 2018 records, however, meet all three of the *Ostrovsky* criteria and must be considered on remand.  The records detail a lengthy hospitalization for psychotic decompensation from June 24, 2018, to July 8, 2018.  *See* Docket Item 6

at 9-18, 31-131. Treatment notes explain that Harris was hospitalized for "another psychotic episode, hearing voices and having hallucinations," *id.* at 15, and for "impoverished thought process and . . . responding to internal events" *id.* at 55-56; *see also id.* at 123 ("admit[ting] [Harris] for further inpatient psychiatric stabilization" because she was "acutely psychotic, decompensated, with concerning collateral, acting in a bizarre and unpredictable manner, . . . [and] at imminent risk of harm to self or others"). Discharge notes explained that her primary diagnosis was psychotic disorder. *See id.* at 39. So the evidence was new, non-cumulative, and unavailable at the time of the hearing.

The evidence also sheds light on Harris's previously-diagnosed bipolar and psychotic disorders—conditions the ALJ found "severe" but not disabling—and therefore is material to Harris's condition during the relevant time period. *See* Docket Item 6 at 143*; see also id.* at 559 (September 2012 notes from Hak J. Ko, M.D., discharging Harris from Buffalo General Hospital and diagnosing psychotic disorder, not otherwise specified); *id.* at 562 (August 2013 treatment note rom Dr. Rosenthal listing bipolar disorder as an "[a]ctive [p]roblem[ ]"). Indeed, the treatment notes link the hospitalizations to the same conditions that resulted in Harris's prior hospitalization on May 22, 2018—before the ALJ rendered her decision. *See id.* at 56.

As the Second Circuit has observed, "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . [and so] it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (second alteration in original) (quoting

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).  That caution applies with special force here.  Harris had a lengthy history of psychotic decompensation.  That she may have fared relatively well for a period of time before May 2018 does not render her May-July psychotic episodes isolated.  On the contrary, those events are material to her ongoing mental illnesses and therefore material to the Commissioner's determination.

In short, the Appeals Council erred in rejecting Harris's June/July 2018 medical records from ECMC and MCWNY.  On remand, the Commissioner must consider those records and incorporate them into her mental RFC determination.

For all the above reasons, this Court remands the matter for reconsideration of Harris's physical and mental RFC.  The Court "will not reach the remaining issues raised by [Harris] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). But on remand, the ALJ should consider and specifically address the impact of Harris's response to stress on her ability to work.  *See Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996)) ("Because stress is 'highly individualized,'" the ALJ must "make specific findings about the nature of [the claimant's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work.").  The ALJ also should ensure that any specific RFC limitations, such as the frequency with which Harris must switch from sitting to standing, *see* Docket Item 6 at

145, are based on specific medical evidence in the record, not the ALJ's "own surmise." *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Harris's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   July 20, 2020
         Buffalo, New York

                                              */s/ Hon. Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE